NOBLES v. TALLEY

[139 N.C. App. 166 (2000)]

BILLY RAY NOBLES and CAROLYN NOBLES, Plaintiffs v. WAYNE E. TALLEY, Defendant, and CSX TRANSPORTATION, INC., Defendant and Third Party-Plaintiff v. D & T LIMOUSINE SERVICE, INC., Third Party-Defendant

No. COA99-631

(Filed 18 July 2000)

### 1. Employer and Employee— FELA—automobile accident— provision of seatbelt

The trial court properly granted summary judgment for defendant CSX in an action arising from an automobile accident where the claims against CSX, an interstate railroad carrier, were brought pursuant to the Federal Employers' Liability Act (FELA); plaintiff contended that CSX failed to comply with the appropriate sections of the Code of Federal Regulations pertaining to seatbelts and was subject to strict liability; plaintiff presented only his statement that he had locked the seat belt closed and that it "obviously" came lose without making an offer of proof that it failed; his statement did not establish why the belt failed or how it was defective; and, assuming that it failed, plaintiff presented no evidence that the belt did not meet standards enunciated in the Code of Federal Regulations.

### 2. Employer and Employee— FELA—automobile accident— speed and lookout

The trial court erred by granting summary judgment for defendant CSX, an interstate railroad carrier, on the issue of whether it violated the Federal Employers' Liability Act (FELA) by providing a negligent driver where there was an issue of fact as to speed and proper lookout.

Appeal by plaintiffs from order entered 13 January 1999 by Judge Knox V. Jenkins, Jr., in Johnston County Superior Court. Heard in the Court of Appeals 13 March 2000.

*Lucas Bryant & Denning, by Robert W. Bryant, Jr., Burge & Wettermark, P.C., by Frank O. Burge, Jr., and Edward L. Bleynat, Jr., for plaintiff-appellants.*

*Bode, Call & Stroupe, L.L.P., by Odes L. Stroupe, Jr., and James N. Jorgensen, for defendant-appellee CSX Transportation, Inc.*

**NOBLES v. TALLEY**

[139 N.C. App. 166 (2000)]

EDMUNDS, Judge.

Plaintiffs Billy Ray and Carolyn Nobles appeal the trial court's grant of defendant CSX Transportation, Inc.'s (CSX) motion for on all of plaintiffs' negligence claims. We affirm in part and reverse in part.

Plaintiff Billy Ray Nobles (Nobles) was an employee of defendant CSX, an interstate railroad carrier. On 10 June 1994, Nobles was part of a crew being driven in a van owned and operated by third-party defendant D&T Limousine Service, Inc. (D&T), which was under contract with CSX. The van was being driven by James Voliva east on Interstate 40 from Rocky Mount to Wilmington. At the same time, Wayne Talley (Talley) was traveling west on Interstate 40 in a pick-up truck towing another car. Talley lost control of his truck, skidded across the median separating the east- and westbound lanes of the interstate, and hit the guardrail protecting the eastbound lanes of the highway. The eastbound CSX van then collided with the vehicle that Talley was towing. Nobles, who had been lying down on the rear seat of the van, was injured in the accident.

Nobles alleged that he was wearing his seat belt at the time of the accident and that it came undone. The investigating state trooper recorded in his accident report that the accident occurred in daylight hours while rain was falling, and the road was straight, flat, and wet. In an affidavit, the investigating trooper stated that, based upon the wet roads and the heavy load that Talley was towing, he issued a citation to Talley for exceeding a safe speed. In his affidavit and accident report, the investigating trooper also noted that he "observed no evidence of seatbelt failure, only of a failure to wear a seatbelt."

Toni King (King), who was traveling west on Interstate 40, saw Talley lose control of his truck and witnessed the collision between the CSX van and the vehicle Talley was towing. In an affidavit, she stated that the "accident happened very quickly and the driver of the van could not have had a chance to react or avoid the accident." However, Sean Mathew (Mathew), a passenger in Talley's truck, stated in an affidavit:

> After Mr. Talley's truck hit the guardrail and came to a stop, I looked around in the cab of the truck to find a cigarette I had dropped. I then opened the truck door and put one foot out on the ground to get out of the truck when a white van ran into the car Mr. Talley was towing.

He estimated "that fifteen to twenty-five seconds passed between the time Wayne Talley's truck began to swerve and the time the van T-boned the car Mr. Talley was towing" and "six to nine seconds passed between the time Mr. Talley's truck hit the guardrail and the time the van collided with the car Mr. Talley was towing."

On 27 March 1996, Nobles filed a complaint against CSX pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C.A. §§ 51-60 (West 1986), and against Talley for common law negligence. On 25 April 1996, Talley filed an answer denying negligence. On 6 June 1996, CSX filed an answer denying all negligence and FELA claims and asserting that Talley was contributorily negligent. CSX also filed a cross-claim against Talley and a third-party complaint against D&T. D&T's answer denied negligence. On 29 October 1998, CSX filed a motion for summary judgment, and on 13 January 1999, the trial court granted the motion and dismissed plaintiffs' case with prejudice. Plaintiffs appeal. Although Carolyn Nobles, Nobles' wife, alleged loss of consortium against Talley, because the issues on appeal apply only to Mr. Nobles' claim against CSX, we hereafter refer to a singular "plaintiff."

Plaintiff's pertinent claims against CSX were brought pursuant to FELA. Plaintiff alleged that CSX violated its duty of care under that act by failing to provide him with a safe place to work in that the van driver was negligent and that the van seatbelts were defective. *See* 45 U.S.C.A. §§ 51-60. FELA applies when an injury occurs to "[a]ny employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce." 45 U.S.C.A. § 51. "The duty to provide a safe work place is non-delegable . . . ." *McKeithan v. CSX Transportation, Inc.*, 113 N.C. App. 818, 821, 440 S.E.2d 312, 314 (1994) (citing *Shenker v. Baltimore & Ohio R. Co.*, 374 U.S. 1, 10 L. Ed. 2d 709 (1963)). CSX is liable under FELA for the negligence of those with whom it contracts to provide operational activities for CSX. *See Sinkler v. Missouri Pacific R. Co.*, 356 U.S. 326, 2 L. Ed. 2d 799 (1958).

[1] Summary judgment is appropriate where there is no genuine issue of material fact and where the movant is entitled to judgment as a matter of law. *See Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971). We review the record in the light most favorable to the nonmovant. *See Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975). "Even though summary judgment is seldom appropriate in a negligence case, summary judgment may be granted in a negligence action where there are no genuine issues of material fact and the

plaintiff fails to show one of the elements of negligence." *Lavelle v. Schultz*, 120 N.C. App. 857, 859, 463 S.E.2d 567, 569 (1995) (citations omitted).

The elements of negligence are a duty owed by the defendant to the plaintiff and nonperformance of that duty proximately causing the plaintiff's injury. *See Camalier v. Jeffries*, 340 N.C. 699, 460 S.E.2d 133 (1995). "What constitutes negligence under FELA is a federal question." *Southern Railway Co. v. ADM Milling Co.*, 58 N.C. App. 667, 670, 294 S.E.2d 750, 753 (1982) (citations omitted). The United States Supreme Court has said that negligence is "the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done." *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 67, 87 L. Ed. 610, 617 (1943). "Under federal law, FELA is accorded a liberal construction; recovery should be allowed if the employing railroad's negligence played any part, even the slightest, in causing the employee's injury." *McKeithan*, 113 N.C. App. at 821, 440 S.E.2d at 314 (citations omitted). "As the Supreme Court made clear in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-55, 106 S. Ct. 2505, 2512-13, 91 L. Ed. 2d 202 (1986), this evidentiary standard must inform our review on summary judgment." *Lisek v. Norfolk and Western Ry. Co.*, 30 F.3d 823, 832 (7th Cir. 1994) (citation omitted).

In his complaint, plaintiff alleged, "Defendant CSX failed to provide [p]laintiff . . . with a safe place to work by providing him with a negligent driver and defective seatbelts, in violation of its duties under the Federal Employers' Liability Act, 45 U.S.C. § 51." We first consider plaintiff's seatbelt claim. CSX's motion for summary judgment required plaintiff to produce a forecast of evidence to support this claim. *See Cockerham v. Ward and Astrup Co. v. West Co.*, 44 N.C. App. 615, 262 S.E.2d 651 (1980). When asked by CSX through interrogatory for plaintiff's "entire basis" for alleging that the van's seatbelt was defective, plaintiff responded, "I locked the seatbelt and it obviously came loose in the collision." When CSX further asked plaintiff to "identify by number and subject matter all regulations, including all provisions and requirements, which you claim defendant CSX violated" as to the allegedly defective seatbelt, plaintiff answered:

Title 49, Code of Federal Regulations, Section 571.208 through 571.210. The subject matter is self-explanatory and the plaintiff claims that the defendant CSX caused the plaintiff to be hauled in

a vehicle which did not comply with the provisions of Title 49 CFR, Section 571.208, .209 and .210 with regard to seatbelts, their application, and the fact that the railroad did not comply with those requirements and standards for seatbelt buckling and unbuckling and seatbelt anchoring securely. In addition, plaintiff claims that the defendant violated Title 45 U.S.C. Section 51, *et. seq.* by placing the plaintiff in a vehicle which was not reasonably safe under the circumstances and did not provide him a safe place to work as he rode in the said van up to the point of the collision.

Plaintiff made no additional allegations or offers of proof to establish that any seat belt requirements were violated.

Plaintiff argues that CSX failed to comply with the appropriate sections of the Code of Federal Regulations (49 C.F.R. §§ 571.208-.210 (1999), which, as plaintiff correctly noted above, pertain to seatbelts) and that this failure subjects CSX to strict liability without a need for a showing of negligence. However, plaintiff has not made an offer of proof that the belt failed, but has only presented plaintiff's statement that because he had locked the belt earlier, it "obviously" came loose. This conclusory statement fails to establish why the belt failed or how it was defective. *See Cockerham*, 44 N.C. App. 615, 262 S.E.2d 651. Moreover, even assuming that the van's seat belt failed in the collision, plaintiff has presented no evidence that the belt did not meet the standards enunciated in the Code of Federal Regulations; such a failure would not be *ipso facto* proof of noncompliance with the regulations. Consequently, plaintiff has not met his burden of forecasting sufficient evidence to support his claim that CSX did not fulfill its duty under FELA to provide a safe van. The trial court properly granted summary judgment as to this issue.

[2] Plaintiff additionally alleged that CSX provided a negligent driver who, at the time of the accident, was driving too fast for conditions and who failed to maintain a proper lookout. "The burden of establishing liability for negligence thus is considerably less imposing under the FELA than under the common law of North Carolina." *Southern Railway*, 58 N.C. App. at 670, 294 S.E.2d at 753. Upon a careful review of the record, we believe there are material issues of fact to be decided by a jury in determining whether the driver of the van was negligent.

The issues of speed and proper lookout may be interrelated. "[W]hether [the defendant] was negligent in respect of speed

depended largely . . . on whether in the exercise of due care she could and should have seen [the plaintiff] in a perilous position and under these circumstances failed to decrease speed." *Cassetta v. Compton*, 256 N.C. 71, 76, 123 S.E.2d 222, 226 (1961). Talley's passenger, Mathew, estimated that twenty-five seconds passed between the moment Talley lost control of his vehicle and the subsequent impact of the CSX van, and that as many as nine seconds elapsed after Talley's truck hit the guardrail before the van collided with Talley. After Talley's truck came to rest, Mathew had time to look for a cigarette he had dropped and open the truck door before the CSX van hit the vehicle Talley was towing.

In contrast to this evidence, which suggests that the van driver had sufficient time to see Talley in trouble and either avoid a collision or reduce his speed, is King's affidavit stating her belief that the driver of the van could not have avoided the accident. Viewing this conflicting evidence in the light most favorable to plaintiff, we conclude that there is an issue of fact to be decided by a jury. " 'If there is any question as to the credibility of witnesses or the weight of evidence, a summary judgment should be denied . . . .' " *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E.2d 419, 422 (1979) (omission in original) (citation omitted). The trial court therefore erred in granting summary judgment for CSX as to the issue of whether CSX violated the provisions of FELA by providing a negligent driver.

Affirmed in part and reversed in part.

Judges LEWIS and JOHN concur.