ROBINSON v. WAL-MART STORES, INC.

[158 N.C. App. 299 (2003)]

———

JAMES ROBINSON, Plaintiff v. WAL-MART STORES, INC., Defendant/Third-Party Plaintiff v. DENZIL WADE WRIGHT, individually, DENZIL WADE WRIGHT d/b/a UNIQUE SYSTEMS, INC. and UNIQUE SYSTEMS, INC., a North Carolina Corporation, Third-Party Defendants

No. COA02-930

(Filed 3 June 2003)

**Premises Liability— slip and fall—summary judgment**
    The trial court erred by granting summary judgment in a slip and fall case in favor of third-party plaintiff store, because there was conflicting evidence as to whether the store's floor maintenance subcontractor created the dangerous situation and as to whether cones were placed in wet areas to provide adequate warnings to alert customers.

Appeal by plaintiff from judgment entered 26 February 2002 by Judge Larry G. Ford in Rowan County Superior Court. Heard in the Court of Appeals 14 April 2003.

ROBINSON v. WAL-MART STORES, INC.

[158 N.C. App. 299 (2003)]

*Doran, Shelby, Pethel and Hudson, P.A., by Michael Doran, for plaintiff-appellant.*

*Guthrie, Davis, Henderson & Staton, P.L.L.C., by K. Neal Davis and Kimberly R. Matthews, for defendant-appellee/third-party plaintiff.*

CALABRIA, Judge.

On 1 February 1997 around 10:00 p.m., James Tyrone Robinson ("plaintiff") and his friend, Joseph Downs ("Downs"), went to a twenty-four-hour Wal-Mart store in Kannapolis to purchase a pair of shoes. The Kannapolis Wal-Mart store contracted floor maintenance services from Denzil Wade Wright d/b/a Unique Systems, Inc. ("Unique Systems"). Unique Systems subcontracted to two other companies: Priority One, owned by Caroline C. Grottalio ("Grottalio") and his most recently hired subcontractor, J.E.S. Company, owned by Jesse Smith ("Smith"). On 1 February 1997, employees from both Priority One and J.E.S. Company cleaned the tiled floors in Wal-Mart. Priority One, operating under Grottalio, cleaned, stripped, and waxed the tiled floors on the main aisle located at the entrance and towards the back of the store while J.E.S. Company, operating under Smith, spent most of the night mopping and spot-mopping the floors throughout the entire store.

Smith and his staff were unfamiliar with the layout of Wal-Mart and their specific duties because this was their first assignment as a floor maintenance company. After Smith shifted from mopping to buffing the floor, Smith testified he frequently got lost and, ultimately, was unable to differentiate between buffed and unbuffed areas of the store.

As plaintiff and Downs proceeded to the shoe department located in the back of the store, they encountered a roped-off area in front and to the right of the shoe department. The individual who was cleaning the tile floor with a high-speed buffer told plaintiff he was finished and took the rope down. This allowed plaintiff and Downs access to the shoe area.

After looking at shoes, plaintiff left the carpeted shoe area by way of the tiled floor to the left of the shoe department, thus avoiding the area in which the cleaner had recently finished buffing. As he stepped onto the tiled floor, his feet slipped out from under him, and he fell on his back and side, hitting his head and pinning his right arm beneath him. While on the floor, plaintiff observed the floor was slippery and

ROBINSON v. WAL-MART STORES, INC.

[158 N.C. App. 299 (2003)]

wet. He also could smell wax on his hand and his jacket. After lying on the floor for a short time, plaintiff got up to find a manager and report the event. The manager took plaintiff's information and explained the procedure to follow if he was injured. The manager accompanied plaintiff to and inspected the area where he fell.

Plaintiff initially thought he had not been injured by the fall, but the next morning, when he felt pain in his back and legs, plaintiff sought medical treatment at Rowan Regional Hospital, where a CT scan was performed. As a result of plaintiff's "excruciating" pain in his back and leg and the numbness in his lower extremities, plaintiff required hospitalization and surgery.

On 31 January 2000, plaintiff filed a complaint against Wal-Mart asserting negligence based on premises liability, creation of a hazardous condition, failure to warn, and failure to implement and enforce policies and procedures relating to safe floor maintenance. On 21 March 2000, Wal-Mart answered the allegations in the complaint and also asserted plaintiff was contributorily negligent. Thereafter, Wal-Mart filed a third party complaint against Unique Systems and Denzil Wright, individually. On 30 November 2001, after Unique Systems answered the third party complaint, Wal-Mart moved for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. Arguments on Wal-Mart's motion for summary judgment were heard before the Honorable Larry G. Ford in the Rowan County Superior Court on 28 January 2002, and on 26 February 2002, the trial court granted Wal-Mart's motion finding there was "no genuine issue as to any material fact and that the Defendant/Third Party Plaintiff is entitled to Judgment as a matter of law[.]" Plaintiff appeals.

Summary judgment is appropriate when the moving party meets its burden of "proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). "By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Id.* "Negligence is not presumed from the mere fact of injury. [A plaintiff must] offer legal evidence tending to establish beyond mere speculation or conjecture every essential element of negligence, and upon failure to do so, non-

suit is proper. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 68, 414 S.E.2d 339, 345 (1992). Nonetheless, "[s]ummary judgment generally is disfavored in cases of negligence or contributory negligence." *Thompson v. Bradley*, 142 N.C. App. 636, 544 S.E.2d 258, *disc. rev. denied*, 353 N.C. 532, 550 S.E.2d 506 (2001). "[I]t is only in exceptional negligence cases that summary judgment is appropriate, since the standard of reasonable care should ordinarily be applied by the jury under appropriate instructions from the court." *Ragland v. Moore*, 299 N.C. 360, 363, 261 S.E.2d 666, 668 (1980).

In the instant case, Wal-Mart alleges plaintiff has failed, beyond mere speculation or conjecture, to produce a "forecast of evidence" necessary to establish the essential elements of negligence; therefore, summary judgment was properly granted by the trial court. To establish the essential elements of negligence, a plaintiff must prove the following: " '(1) the standard of care [duty owed]; (2) breach of the standard of care; (3) proximate causation; and (4) damages.' " *Clark v. Perry*, 114 N.C. App. 297, 304-05, 442 S.E.2d 57, 61 (1994) (quoting *Lowery v. Newton*, 52 N.C. App. 234, 237, 278 S.E.2d 566, 570 (1981).

Wal-Mart contends plaintiff has failed to produce sufficient evidence to raise a genuine issue of material fact as to whether Wal-Mart breached any duty owed to plaintiff. To show Wal-Mart breached the duty owed, "plaintiff must show . . . defendant either (1) negligently created the condition causing the injury, or (2) negligently failed to correct the condition after actual or constructive notice of its existence." *Roumillat*, 331 N.C. at 64, 414 S.E.2d at 342-43.

In his deposition testimony, plaintiff testified as follows:

Q: And to your knowledge, you never saw any floor cleaning person in the area where you fell and never saw that area roped off, correct?

A: No; That's correct.

Q: So are you assuming because the floor was wet and there was a waxy smell that earlier there must have been somebody in the cleaning process in that part of the aisle too?

A: Yes, I would say that.

Q: But other than that assumption and because you saw the person earlier in a different place, you don't have any evidence that that's what caused the wetness or wax to be on the floor where you fell, do you?

ROBINSON v. WAL-MART STORES, INC.

[158 N.C. App. 299 (2003)]

A: No, I don't have any—no evidence over that, no. I just know I stepped on a wax floor and fell.

Based on this deposition testimony, Wal-Mart argues plaintiff's evidence is limited to pure speculation or conjecture.

Plaintiff's deposition testimony, however, was not the only evidence presented to the trial court. As to the creation of the wetness on the floor, Smith had just begun working as a floor maintenance subcontractor at Wal-Mart. In his deposition testimony, he stated that he swept and mopped the "whole place[.]" When asked if he had spot-mopped in the area of the shoe department, he answered, "I don't remember, but I probably did." When asked whether he knew if an area he had mopped was dry before he went on to the next section, Smith testified, "Well, you know, I didn't—I guess I didn't know they was [(sic)] dry, you know, honest about it [(sic)]." While Smith claimed he had used cones spaced approximately fifteen feet apart, plaintiff testified in his deposition he did not remember observing cleaning people marking the aisle in which he fell designating that it was wet.

Moreover, Grottalio testified as follows concerning water left on a waxed floor:

Q: You also talked about wax being water-soluble.

A: Uh-huh (yes).

Q: And if you allow water to be on wax—

A: Too long.

Q: —for too long, the wax comes up and—

A: Softens.

Q: —softens and basically is coming up off the surface?

A: It will go right up in your pad, yeah, clog it up.

Q: And also sit there wet with the water?

A: Uh-huh (yes).

This testimony and Smith's admission that it was likely he mopped in the area in question and may have left it wet corroborates plaintiff's contentions that the floor was wet and that his jacket smelled of wax.

Because there is conflicting evidence as to whether Smith created the dangerous condition and as to whether cones were placed in wet areas to provide adequate warning to alert customers, plaintiff has produced sufficient evidence to raise genuine issues of material fact. Accordingly, the granting of summary judgment was premature.

Reversed.

Chief Judge EAGLES and Judge HUNTER concur.